IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LYNN PROPERTIES, LLC,

                Plaintiff,                OPINION AND ORDER

    v.

                                         21-cv-305-wmc

JTH TAX INC. and HARTFORD
FIRE INSURANCE COMPANY.

                Defendants.

---

In later January 2019, Wisconsin experienced extremely low temperatures, even for winter in the upper Midwest. As a result, a commercial building property in Portage, Wisconsin, owned by plaintiff Lynn Properties, LLC ("Lynn") was severely damaged when its water pipes froze and burst. Lynn subsequently brought this lawsuit in state court, claiming that lessee, JTH Tax Inc. ("JTH"), and its insurer, Hartford Fire Insurance Company ("Hartford") were liable for failing to properly heat the building. Defendant JTH then removed to federal court.[1] JTH now moves for summary judgment on the merits (dkt. #38), while Hartford separately seeks summary judgment limiting its coverage responsibility. (Dkt. #47.) For the reasons given below, the court finds that no reasonable jury could find JTH liable for the claimed damages given its timely notice to Lynn that JTH had vacated the building. Because there is no liability for defendant JTH, the court need not take up defendant Hartford's motion to limit the scope of JTH's insurance coverage.

---

[1] The court has jurisdiction under 28 U.S.C. § 1332 because it previously found defendant adequately alleged complete diversity of citizenship and an amount in controversy greater than $75,000. (Dkt. #10.)

UNDISPUTED FACTS

Defendant JTH began leasing and running a tax business 2547 New Pinery Road, Portage, WI ("the Property") on August 17, 2015. At that time, Marian Walters was the landlord for the Property. JTH renewed its lease on April 19, 2018, extending the term until April 30, 2019. Among other things, JTH's lease specified that the landlord has full responsibility for the HVAC, unless damage was caused by direct misuse by the lessee.

In the summer of 2018, however, JTH decided to stop operations at the Property. On August 16, 2018, JTH then returned all keys for the Property to Marian Walters' daughter, Megan. Megan filled out a document titled "Verification of Keys Returned" which stated that "all parties acknowledge that the Tenant (or the Tenant's approved representative) have abided by the rules and regulations within the lease, and have peacefully surrendered keys to the Landlord (or the Landlord's approved representative)." (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶¶ 13-14.) Plaintiff Lynn does not dispute that JTH returned all keys to Megan Walters in August, 2018, and no longer had access to the Property. However, Lynn emphasizes that after vacating, JTH continued to pay rent and utilities for the Property until its lease ended in April of 2019. Even so, there is no indication that JTH ever misused the HVAC system while it had access to the Property.

As fate would have it, Lynn purchased the Property from Marian Walters on September 6, 2018, at which time JTH's lease was assigned to Lynn. Still, as part of the purchase process, Walters had walked Lynn through the Property, and Lynn both "observed and understood that JTH had vacated the Property." (Def.'s Rep. to Pl.'s Opp'n.

2

to Def.'s PFOF (dkt. #61) ¶ 20.) Marian Walters also executed an affidavit on September 6, attesting that she was "in sole possession of the property *and* that no other party has possession *or* has the rights of possession under any lease or other agreement." (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶ 20 (emphasis added).) After purchasing the Property, however, Lynn chose not to get insurance for the building, perform an inspection of the furnace, or even visit the Property until February of 2019, about five months after the purchase and shortly after its pipes had already burst. (Def.'s PFOF (dkt. #40) ¶¶ 22-23.)

On January 28, 2019, the Governor of Wisconsin declared a state of emergency in advance of dangerously low temperatures. Between January 31 and February 1, 2019, the actual low temperature in Portage hovered between negative 28 and negative 29 degrees Fahrenheit. Sometime during those two days, the building's pipes on the Property froze, burst and caused flooding, water damage, and mold. The building was so damaged by this flooding that it eventually had to be demolished.

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On the other hand, if that party can establish any genuine issue of material fact, the court cannot grant summary judgment. *Id*. To be genuine, however, the evidence as to the issue must be "such that a reasonable jury could return a verdict for the

non-moving party" if "all justifiable inferences are . . . drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986) (citation omitted).[2]

In this lawsuit, plaintiff asserts two claims: breach of contract and negligence. To state a claim under Wisconsin law for a breach of the lease contract, plaintiff Lynn Properties must prove: "(1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach." *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 801 (W.D. Wis. 2006) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 296, 187 N.W.2d 200 (1971)). As to plaintiff's negligence claim, the specific elements of a cause of action in negligence under Wisconsin law are: (1) a duty of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Green Spring Farm v. Kersten*, 136 Wis. 2d 304, 319 (1987). Under either theory, Lynn has been unable to produce sufficient evidence from which a reasonable jury could find that JTH breached anu obligation or duty.[3]

"[A] tenant's liability for the breach is evaluated in part by determining whether the landlord has accepted the tenant's return in a manner that effects a legal surrender of the

---

[2] Plaintiff cites a number of Wisconsin cases to establish the applicable standard of review at summary judgment, but even in diversity cases, federal procedure dictates the standard of review at summary judgment. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010).

[3] In addition, because Lynn stands in the shoes of the original landlord Marian Walters under the original lease agreement with JTH, any claim *except* for breach of that contract is barred by Wisconsin's economic loss doctrine. *Below v. Norton*, 2008 WI 77, ¶ 35, 310 Wis. 2d 713, 731, 751 N.W.2d 351, 360.

premises." *CCS N. Henry, LLC v. Tully*, 2001 WI App 8, ¶ 10, 624 N.W.2d 847, 850. A voluntary surrender "entails the tenant's giving up of the lease before its expiration and the landlord's acceptance of the tenant's relinquishment of rights, either in fact or as implied at law." *Id.* Lynn's main argument for breach at summary judgment is that while JTH may have voluntarily returned its keys to the building, it did not voluntarily surrender its lease of the property as evidenced by its continuing to pay rent and utilities through the end of the lease. These payments, then, created a continuing obligation to maintain the Property, including ensuring proper heating of the building. However, the fact that JTH acknowledged its financial obligations under the lease does not make the formal surrender of its rights to possess the property any less binding.

The Wisconsin Supreme Court has found that factual circumstances are essential to deciding whether a landlord had accepted the surrender of property. *Chandler v. Hinds*, 135 Wis. 43, 115 N.W. 339, 340 (1908). Accordingly, the court will also focus on the factual circumstances surrounding JTH's potential surrender. Here, the landlord acknowledges that she accepted JTH's return of all keys to the property, both orally and in writing through her agent as evidenced by the "Verification of Keys Returned." Specifically, the Verification states "all parties acknowledge that the Tenant (or the Tenant's approved representative) have abided by the rules and regulations within the lease, and have peacefully surrendered keys to the Landlord (or the Landlord's approved representative)." (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶¶ 13-14.) The plain language of that document would appear to establish that control of and obligation to maintain the building itself had been surrendered to the landlord, whether or not JTH

5

acknowledged its obligation to pay rent and utilities or retained a right to sublease the property.

Nevertheless, plaintiff argues that its position is supported by the Wisconsin Supreme Court's decision in *Chandler*. Superficially at least, the facts are similar since *Chandler* also dealt with weather-related damage to a property that the defendant had allegedly vacated. On those facts, the Wisconsin Supreme Court held that: "the proof fail[ed] to support defendant's claim that his attempted surrender of the lease was accepted. The facts that the defendant left the key at plaintiff's house [and] that plaintiff did not return it to defendant" did not necessarily show acceptance of the surrender. *Id*. at 340. Thus, plaintiff argues that the fact that JTH gave up its keys is not enough to show that landlord Marian Walters accepted JTH's surrender.

However, the circumstances here contain none of the ambiguity presented in *Chandler*. First, Megan Walters as the landlord's representative unambiguously accepted receipt of all of JTH's keys *and* documented that acceptance in writing. (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶ 13.) Second, when the landlord, Marian Walters herself, later showed Lynn the Property as part of the September 2018 sale to Lynn, it was made aware that JTH had vacated the building. (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶ 20.) Third, while JTH was still paying rent and utilities and at least technically retained the right to sublease the property under the terms of the lease until the following April, the parties do not dispute that JTH surrendered all keys, no longer had access to the Property after August, 2018, and never attempted to sublease the Property. (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶ 16.) Fourth and finally, Marian Walters

represented to Lynn in writing as part of the purchase documents on September 6, 2018, that she was again "in sole possession of" the Property and that "no other person has the possession or right of possession under any lease or other agreement." Unlike *Chandler*, therefore, where the landlord claimed that he never received the lessee's keys or letter of surrender, defendant JTH has shown that its original landlord Marian Walters was aware JTH had left *and* that fact was communicated to plaintiff Lynn when it purchased the Property. *Id.* at 340.

In fairness to plaintiff, the *exact* details of defendant JTH's continued payments after vacating possession of the Property to Marian Walters are unclear. Despite vacating in August, JTH apparently never disputed its obligation to fulfill making the remaining payments called for by the lease agreement, and indeed waited until January to officially notify Lynn that it would not renew the lease consistent with that agreement. (Pl.'s Opp'n. (dkt. #57) 2.) However, Wisconsin law recognizes voluntary surrender is a "tenant's relinquishment of rights, either in fact or as implied at law." *CCS N. Henry*, 2001 WI App at ¶ 10. On the facts here, no reasonable jury could *not* imply JTH surrendered its rights to possession of the Property. This is especially true since landlords may, and often do, ask lessees who vacate before the end of their lease to pay an amount equivalent to some portion of the remaining term of the lease. Breaking a Lease for Tenants, https://www.tenantresourcecenter.org/breaking_a_lease_for_tenants (accessed August 18, 2022). In contrast, nothing in Wisconsin law supports the contention that a lessee must cease paying rent for a voluntary surrender to occur, and the court is not convinced that such a restriction is justified. Thus, defendant's continued payments are of no import in

light of the undisputed fact that all parties *knew* JTH was not occupying and had no access to the Property when Lynn purchased it. Indeed, they shared an understanding as documented at the time of sale of the Property, that JTH did not possess and had no right to possess the Property by "lease or other agreement."[4]

Plaintiff raises myriad other arguments in opposition to summary judgment, which the court will briefly address. First, plaintiff argues that JTH did not properly vacate the Property because it gave its keys to Megan Walters, rather than Marian Walters. (Pl.'s Opp'n. (dkt. #57) 4.) This is unpersuasive, as there is nothing to suggest Megan was *not* serving as an agent of Marian. Indeed, even if her daughter were not formally authorized by Marian to act as her agent, she certainly had apparent authority to do so as to JTH. Regardless, Marian herself acknowledged in her deposition that: (1) she was fine with JTH vacating the Property; *and* (2) she personally led Lynn on the pre-purchase tour where she made him aware that JTH had vacated the building. (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶ 14, 20.) Of course, she also gave Lynn an affidavit at the time of sale attesting that "no other party has possession or has the rights of possession under any lease or other agreement." (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶ 20.) Because there is *nothing* to suggest that Marian's daughter had taken unauthorized actions in signing the verification, much less given JTH reason to think otherwise, a reasonable jury would have to reject this argument.

---

[4] If anything, had JTH attempted to possess or sublease possession for the few months left on the lease, Lynn's relief would have had to come from seller Walters, who represented no such right existed at the sale of the Property in September.

Lynn next notes that JTH had added a clause allowing subletting the last time they negotiated their rental contract for the Property before the incident, so there was at least the *possibility* that JTH could have sublet the space to another renter; however, the parties do not dispute that JTH did not have access to the Property after August 2018, never attempted to sublease the Property, and most importantly, upon purchase of the Property, Walters as seller, represented it no longer had any right to lease or sublease the Property. (Def.'s Rep. to Pl.'s Opp'n. to Def.'s PFOF (dkt. #61) ¶ 16.)[5]

Finally, Lynn argues that JTH is ultimately liable because the lease specified that any abandonment of the Property leaves JTH responsible for ensuing damages. This argument is tied to "[t]he interpretation of a contract [and] presents a question of law." *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶ 22, 833 N.W.2d 586, 592. Specifically, the lease states,

> Lessee shall not abandon (two or more months without rent paid) or vacate the premises at any time during the term of this lease. **In the event of abandonment of premises by Lessee, lessee shall be in breach of this lease and may be sued for damages**, court costs, and lost rent for the remainder of the lease by Lessor.

(Pl.'s Opp'n. (dkt. #56) 8) (emphasis added).

Lynn is essentially suggesting that JTH's vacating of the Property early automatically rendered it liable for damages despite the then owner's acceptance of the

---

[5] Even if JTH changed its mind and decided to sublease the space, it would have had to communicate with Lynn about any subleasing, and at the very least get the keys to the building back. Thus, even if subletting were a possible option for JTH, there is nothing that would have suggested to Lynn that JTH maintained any continued right of possession of, much less might sublet, the Property, especially since Lynn was made aware that *no* company was occupying the Property.

9

surrender, as well as the monthly payments that followed. This argument is also unpersuasive. First, the grant of damages only mentions abandonment, not vacating, casting doubt on whether the landlord would have a right to sue for damages in those circumstances, even if she had not at least implicitly consented to JTH's surrender of possession. More importantly, though, such sweeping liability is nonsensical. There is no suggestion that JTH misused or damaged the HVAC system. (Pl.'s Opp'n. (dkt. #56) 8.) Lynn does not argue that JTH left the heat off in the building when vacating. Indeed, JTH continued to pay utility bills for the Property, and Lynn itself acknowledges that "bills from Alliant Energy demonstrate the furnace was operating up to the assumed time of loss." (Pl.'s Opp'n. to Def.'s PFOF (dkt. #58) ¶ 31.)

Ultimately, there was a five-month time period between JTH surrendering the Property with the landlord's consent and the relevant damage. During those five months, it is undisputed that Lynn *knew* no one was at the property, had received written assurances at closing that no one else had a right to be there, and JTH no longer had access to the building, yet no one associated with Lynn so much as set foot in the building. Even after the Governor declared a state of emergency because of impending, extreme cold, which the jury would know (or the court would take judicial notice) is a highly unusual event, Lynn never checked on its Property.

To hold JTH liable for damage that occurred months after it had lawfully surrendered that Property, with all parties fully aware that JTH had moved out, would be ludicrous. Lynn does not even really attempt to argue that JTH could or should have done something different that would have prevented the damage. Indeed, it continued to pay all utilities,

and the undisputed evidence is that the heater continued to function until overwhelmed by the extreme cold conditions. Instead, Lynn's sole argument is that because JTH signed a lease, any damages to the building are attributable to JTH, no matter how attenuated. Even if JTH had not voluntarily surrendered its lease, reading the lease so broadly goes beyond common sense. Regardless, on these undisputed facts, the court is confident in finding that no reasonable jury would or could find for plaintiff. With no evidence of breach, defendant JTH's motion for summary judgment against plaintiff is granted.

## ORDER

IT IS ORDERED that:

1) Defendant JTH's motion for summary judgment is GRANTED

2) Defendant Hartford's motion for summary judgment is DENIED AS MOOT

Entered this 29th day of August, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge